UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Charlene May Gremillion, et al                    Civil Action No. 08-0283

versus                                            Judge Tucker L. Melançon

State Farm Fire and Casualty Co.                  Magistrate Judge Hanna


MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Rec. Doc. 34] filed by

defendant, State Farm Fire and Casualty Company ("State Farm") and plaintiff Charlene May

Gremillion's memorandum in opposition [Rec. Doc. 36]. For the reasons that follow, the

Motion will be granted.

I. BACKGROUND

The record provides the following undisputed facts. *R. 34-2; R. 36-1*. Plaintiff initially

began working for State Farm in 1980 as a "Secretary 1" in the Lafayette Operations Center for State

Farm Fire and Casualty Company. As a secretary, plaintiff reported directly to Joe Terrell, who

was a Fire Claim Superintendent. Approximately two years after being hired as a secretary,

plaintiff was promoted to a claim representative position. Plaintiff's job duties as a State

Farm claim representative included the initial investigation and ongoing handling of her

claim files, evaluating and determining legal liability as it related to her claim files, reporting

her progress to her supervisor, and coordinating with outside sources (such as agents and

attorneys) to aid in claim resolution. Plaintiff had the authority to settle claims up to $30,000

without prior approval from her supervisor. Plaintiff's employment was terminated by State Farm on July 25, 2006.

Terrell hired plaintiff for her initial position in 1980 and remained her immediate supervisor until his retirement in 2004. Terrell's last evaluation of plaintiff was in March, 2004. She received a Level 2 evaluation under "results," which is defined as "consistently achieves expected results and may at times exceed expected results." For the same period, plaintiff received a "Proficient" evaluation under "Competencies," which is defined as "Consistently demonstrates competencies" and "demonstrates at a high level in some situations."

In August 2004, Paul Robichaux took over Terrell's position as team manager for the Lafayette office and became plaintiff's immediate supervisor. Shortly after becoming her supervisor, Robichaux met with plaintiff and Mary Hargrave, both of whom were the casualty claim representatives in the Lafayette office at that time, and advised them of his expectations. Specifically, Robichaux advised plaintiff that all claim representatives were required to maintain complete activity logs and provide timely status reports on their assigned files. Robichaux also informed plaintiff that the claim representatives were responsible for generating letters to the attorneys assigned to their claim files, as well as completing pretrial and committee reports. Plaintiff was not required to perform these particular tasks while working under Terrell's supervision.

On December 16, 2004, Robichaux issued plaintiff a memorandum entitled

2

"performance issues" and met with her to discuss her ongoing failure to meet his expectations and perform the duties required by her position. Specifically, Robichaux and plaintiff discussed her consistent failure to timely document the activity logs of her claim files. Also, Robichaux expressed his concerns regarding certain incidents, including plaintiff's failure to attend a mediation (despite being told that she was expected to do so) and settling a claim without performing a scene inspection. Plaintiff told Robichaux that she believed her performance was "due to so many changes being placed upon her and the overwhelming expectations and workload." *R. 34-3, Exh. 10.* At the close of this meeting with Robichaux, plaintiff advised him that she would submit her own memorandum responding to his concerns about her job performance, but she never did. In her August 4, 2009 deposition, plaintiff stated that rather than submit the memorandum, she opted to "wait and see how things were going to go, how difficult it was going to be to comply with all of these demands." *R. 36, Exh. 9, Depo. Of Plaintiff, p. 115.*

After showing slight improvement over the next several months, plaintiff's performance problems later resurfaced. Specifically, plaintiff repeatedly failed to maintain prompt communication with attorneys and claimants on her files, her files often lacked documented activity and she showed a lack of proactive effort to bring her claim files to resolution. These issues were documented and discussed with plaintiff as a part of her 2005-2006 Employee Performance Results Tool ("EPR"). *R. 34, Exh. C, 12/14/04 Confidential Memo.* Approximately four months later, on April 13, 2005, Robichaux completed an End

3

of Cycle Review.  Plaintiff's overall performance was assessed as follows: "Results: Level 2 - Consistently met and occasionally exceeded expectations. Competencies: Level 2 - Consistently demonstrated competencies." *R. 36, Exh. 11, 03/03/05 Emp. Perf. Tool.*  In particular, while the evaluation stated that plaintiff "has excellent customer service results and "does a good job of investigating her files, but she sometimes forgets to document this work in the claim file." *Id.*  Other comments related to plaintiff's need for improvement included her computer skills and "providing a more proactive and diligent investigation on her claim files and timely report to management." *Id.*

Plaintiff was diagnosed with fibromyalgia by her rheumatologist, Dr. Ladislas Lazaro, on May 2, 2005.[1]  After being diagnosed with fibromyalgia, plaintiff informed Robichaux of her condition.  Robichaux advised plaintiff to contact State Farm's medical department to discuss any work-related impact of her condition.  Several months later, plaintiff submitted an Employee Medical Certification Form dated November 15, 2005, which was signed by Dr. Lazaro.  Under "Work Restrictions, if any", Dr. Lazaro indicated "0 DOT light duty job description."  On November 17, 2005, plaintiff sent Dr. Lazaro a letter with a copy of her State Farm Level  Description stating, "I was concerned about the zero work restrictions, please review the attached job description, in particular the items that are underlined and see if any adjustments need to be made.  I would find it particularly difficult if not impossible

---

[1] Dr. Lazaro defined Fibromyalgia syndrome as a non-inflammatory musculoskeletal disorder, where a patient generally report complaints of pain above and below the waist on both sides of the body, and have tender point present, usually 11 or more out of a total of 18. *R. 36, Exh. 12.*

to unfold, lift, & carry a trifold wooded [sic] ladder and climb on a roof."[2] Per plaintiff's request, Dr. Lazaro revised her medical certification form, by apparently scratching though the "0".[3] On January 11, 2006 he sent a letter to State Farm indicating that plaintiff was restricted to "DOT light duty job description"[4] and that lifting should be limited to less than twenty pounds for one-third of the day, less than ten pounds for two-thirds of the day and no lifting of greater than twenty pounds. This restriction also limited walking to approximately one-half to two-thirds of the day on an intermittent basis and stated that plaintiff should not climb ladders.

On or about April 7, 2006, plaintiff submitted an ADA Employee Questionnaire in which she requested that State Farm accommodate her with "no lifting of ladders or climbing roofs" or "driving long distances." State Farm informed plaintiff that management agreed to her requested accommodations, and she was assigned to work exclusively as an in-office claim representative. Plaintiff did not, at any point, request any additional accommodations aside from those listed on her ADA Employee Questionnaire and set forth in Dr. Lazaro's

---

[2] Prior to the time plaintiff sent this letter to Dr. Lazaro, it had been at least ten years since she operated a ladder or climbed a roof. In her deposition, however, plaintiff testified that Robichaux "kept saying, 'Well what if you have to climb a ladder? What are you going to do?'" *R.36, Exh. 9, Depo. Of Plaintiff, p. 68.*

[3] The Form in the record contains a "0" which has been scratched through. Based on plaintiff's letter to Dr. Lazaro, and defendant's undisputed statement of facts, the Court assumes that the original Form stated "0 DOT light duty job description."

[4] State Farm states that "DOT" refers to the Department of Transportation, while plaintiff asserts that "DOT" stands for Dictionary of Occupational Titles, Fourth Edition, Vol. II, 1991. *R. 34, #25; R. 36, #25B.*

letter.

At the conclusion of the 2005-2006 EPR evaluation period, an Employee Performance Results Tool dated April 6, 2006, provided that plaintiff's work performance still showed no signs of significant improvement and she was therefore given a Level 1 (lowest) rating for Competencies and Level 1 (lowest) rating for Results which indicated that she "Achieved some expectations, but missed others." *R. 34, Exh. D.*  While the evaluation notes that plaintiff had only positive responses on returned customer service surveys as well as good communication skills, she continued in failing to maintain prompt communication with attorneys and claimants.  *Id.*  In particular, the review indicates that with regard to correspondence received from attorneys, plaintiff decided not to respond or was untimely in responding.  *Id.*  In dealing with claimants, the review states that plaintiff was not proactive about obtaining information about the claim from claimants and was untimely in returning medical records requests and following up on medical bills.  *Id.*

On June 22, 2006, Robichaux issued a performance memorandum to plaintiff and met with her to discuss her performance issues.  *R. 34, Exh. I.* During this meeting, Robichaux had an in-depth discussion with plaintiff in which he raised his concerns regarding her ongoing failure to improve her claim handling practices.  Robichaux pointed to specific claim files on which plaintiff failed to perform the necessary investigation on the claim as well as additional files on which she did not perform any activity for long periods of time.  Plaintiff did not, at any time, contest the accuracy of the information contained in Robichaux's

6

performance memorandum.  At the close of this meeting, plaintiff was advised that she was being placed on immediate performance counseling and that failure to show significant improvement would result in disciplinary action, including possible termination.

During the following three weeks, Robichaux met with plaintiff regularly as a part of her performance counseling.  On July 19, 2006, Robichaux submitted a confidential memo to Bill Gourgues, South Louisiana Fire Claims Section Manager, providing his observations while counseling plaintiff and recommending plaintiff's termination. Robichaux indicated that: (1) Plaintiff submitted several status reports that showed no meaningful investigative activity on various files; (2) Plaintiff had not reviewed her open claims listing by the end of the three week period; (3) Plaintiff had continued to inadequately document her claim activity; (4) Plaintiff stated that she had difficulty prioritizing what needed to be done during the day; and (5) Plaintiff continued to fail to respond to management direction.  R. 34, Exh. J.  Robichaux also held a conference with Gourgues and Sandra Wilson, State Farm Human Resources Representative, to discuss plaintiff's status and the results of her counseling. Gourgues accepted Robichaux's recommendation and on July 19, 2006, he submitted this recommendation to Carolyn Watts, Fire Company Division Manager.  On July 22, 2006, Watts accepted and approved Gourgues' recommendation that State Farm terminate plaintiff's employment. On July 25, 2006, Gourgues met with plaintiff and informed her that her employment with State Farm was terminated.

After plaintiff's termination from State Farm, her claim files were reassigned to Kyle

Reimer and Paula Lasseigne, both of whom were plaintiff's former co-workers at the Lafayette office. Plaintiff is not currently employed. Since leaving her employment with State Farm, plaintiff has not made any efforts to obtain employment nor has she attempted to identify any potentially available employment. Plaintiff has not consulted with any of her health care providers regarding the possibility of returning to work. Plaintiff currently resides with Ronald Gremillion, her husband, and remains primarily responsible for the daily chores and upkeep of their home. She occasionally prepares meals for herself and her husband and participates in recreational activities with her friends. Since her termination from State Farm, plaintiff continues to work with a computer at home on a daily basis, as she currently works on genealogy reports and electronic photo albums on her home computer.

Plaintiff completed a medical chart questionnaire and supplemental intake questionnaire for the Louisiana Commission On Human Rights ("LCHR") within 365 days of her termination. On November 28, 2007, the LCHR issued a determination finding that "[State Farm] addressed the light duty portion (physical) and failed to accommodate [plaintiff] with respect to the medical issues of her disability." *R. 36, Exh. 18.* The determination further stated that State Farm "was quite aware of [plaintiff's] disability" and "Robichaux had the option to recommend training, probation, demotion, suspension or job reassignment; however, he recommended termination." *Id.* Based on its analysis, the LCHR concluded that State Farm was in violation of the "Louisiana Employment Discrimination Law (LEDL), the Age Discrimination in Employment Act (ADEA) and Title I of the

8

Americans with Disabilities Act of 1990" (ADA), in that plaintiff was discharged because of her age, 58 and her disability, Fibromyalgia." *Id.*

On February 28, 2008, plaintiff filed this lawsuit against State Farm alleging unlawful termination under the ADA as well as the ADEA and Louisiana's Employment Discrimination Law (LEDL), alleging she was terminated from her position as a claim representative at State Farm because of her disability and her age.[5]  State Farm filed this motion for summary judgment seeking dismissal of plaintiff's claim under the ADA and the related Louisiana state law because: (1) plaintiff does not suffer from a disability as defined by the statute; (2) even if plaintiff does have a disability under the ADA, she is not a "qualified individual with a disability;" and, (3) State Farm has articulated a legitimate, non-discriminatory reason for plaintiff's termination, that is, her poor work performance, that was unrelated to her alleged disability.  *R. 34.*  State Farm also seeks dismissal of plaintiff's discrimination claim under the ADEA and the related Louisiana State law because she cannot introduce sufficient evidence to raise a genuine issue of material fact as whether State Farm's proffered legitimate non-discriminatory reason for her termination is pretext for age discrimination.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and

---

[5]  In her Original Complaint, plaintiff named Ronald Gremillion, as a co-plaintiff and asserted claims for retaliation under the ADEA.  These claims were dismissed  in the Court's November 12, 2008 Judgment.  *R. 14.*

affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[6] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's

---

[6] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate

by affidavit or other admissible evidence that there are genuine issues of material fact or law.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,*

398 U.S. 144. 159 (1970); *Little,* 37 F.3d at 1075. There must be sufficient evidence favoring

the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood*

*v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue

of material fact if, viewing the evidence in the light most favorable to the non-moving party,

no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach.*

*& Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of

law, the court is required to render the judgment prayed for.  Fed. R. Civ. P. 56(c);  *Celotex*

*Corp.,* 477 U.S. at 322.  Before it can find that there are no genuine issues of material fact,

however, the court must be satisfied that no reasonable trier of fact could have found for the

non-moving party.  *Id.*

### III. LAW & ANALYSIS

### A.    Plaintiff's Claim Under the Americans with Disabilities Act (ADA)[7] and the Louisiana Employment Discrimination Law (LEDL)

---

[7]  In the ADA Amendments Act of 2008 ("2008 ADAAA"),  Congress specifically superseded certain aspects of the Supreme Court's rulings in *Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002).  The Fifth Circuit has indicated that the presumption against retroactivity applies to ADA cases based on events pre-dating the January 1, 2009 effective date of the 2008 amendments.  *EEOC v. Agro Distrib.,* 555 F.3d 462, 469 n. 8 (5th Cir.2009).  As the events alleged in this case occurred before January 1, 2009, the Court must apply the law as it stood prior to the effective date of the ADA Amendments Act.

Plaintiff alleges that State Farm violated both the ADA and the LEDL by discriminating against her because of her fibromyalgia and failing to accommodate the medical issues of her disability.[8]  The ADA "prohibits an employer from discriminating against 'an individual with a disability' who with 'reasonable accommodation' can perform a job's essential functions ...." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) *quoting* 42 U.S.C. § 12112(a).  In a case brought under the ADA where only circumstantial evidence is offered to show the alleged unlawful discrimination, such as this one,  the Court applies the *McDonnell Douglas* burden-shifting framework.  *E.E.O.C. v. Chevron Phillips Chemical Co., LP,* 570 F.3d 606, 615 (5th Cir. 2009). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: (1) he was "disabled"; (2) he was qualified for the job; and (3) the defendant subjected him to an adverse employment decision because of his disability. *See Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir.1999) *citing* 42 U.S.C. § 12112(a); *see also Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir.2006).   If this burden is met, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. *See Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003); *McInnis v. Alamo County. Coll. Dist.*, 207 F.3d 276, 279-280 (5th Cir.2000). Once the employer proffers such a reason, the burden shifts back to the plaintiff to prove that the reason was merely a pretext for discrimination. *McInnis*, 207 F.3d at 280.

---

[8]  Claims asserted under the Louisiana Employment Discrimination Act are analyzed under the same framework and precedent as ADA claims. *See  King v. Phelps Dunbar*, 743 So.2d 181, 187 (La.1999); *Ned v. Opelousas General Hosp.*, 2007 WL 952072, 1 (W.D.La.,2007) (J. Doherty).

### 1. Whether Plaintiff was Disabled

"[I]n order to make a prima facie case of discrimination under the ADA, a plaintiff must establish that she is a qualified individual with a disability and that the negative employment action occurred because of the disability. *See* 42 U.S.C. § 12112(a). Thus, the plaintiff must first establish that she has a disability. *See Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir.1996), *cert. denied*, 519 U.S. 1093 (1997)." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998). The term "disability" encompasses the following: (1) a mental or physical impairment that substantially limits one or more major life activities of an individual, (2) a record of such an impairment, or (3) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). In order to establish a prima facie case of disability discrimination and survive summary judgment, a plaintiff must prove a substantial limit with specific evidence that his *particular* impairment substantially limits his particular major life activity." *Waldrip v. GE*, 325 F.3d 652, 656 (5th Cir.2003) (describing standard for establishing disability as "exacting") (emphasis in original). Hence, an analysis of whether plaintiff suffers from a disability within the meaning of the ADA requires three separate, yet related, inquiries: (1) whether she suffered from a physical impairment; (2) whether the physical impairment limited any major life activity; and (3) whether the limitation was substantial. *Dupre v. Charter Behavioral Health Sys.*, 242 F.3d 610, 613 (5th Cir.2001) *citing Bragdon v. Abbott*, 524 U.S. 624, 630-631 (1998). These questions must be determined on an individualized, case-by-case basis. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S.

13

184, 198 (2002) superseded in part by statute.

### I. Physical Impairment

In determining whether an impairment should be classified as a covered disability, the implementation legislation of the ADA provides factors to be considered including: (1) the nature and severity of the impairment; (2) the duration of the impairment; and (3) the long-term impact of the impairment. *See Aguillard v. Mukasey,* 295 Fed.Appx. 619, 622 (5th Cir. 2008) *quoting* 29 C.F.R. §1630.2(j)(2). It is undisputed that plaintiff was diagnosed by her rheumatologist, Dr. Ladislas Lazaro, in May 2005 with the impairment fibromyalgia. Dr. Lazaro's affidavit states that plaintiff's fibromyalgia substantially limits plaintiff's major life activities of sleeping and working. *R. 36, Exh. 12, Aff. Of Dr. Lazaro.*

### ii. Impairment of a Major Life Activity

"In order to show an impairment that 'substantially limits a major life activity," the plaintiff "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Carter v. Ridge,* 255 Fed.Appx. 826, 829, 2007 WL 4104349, 3 (5th Cir. 2007) *citing Toyota.* The term "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). In addition to working being a major life activity, the Fifth Circuit has concluded that sleeping is a major life activity. *E.E.O.C. v. Chevron Phillips Chemical Co., LP,* 570 F.3d 606, 616 (5th Cir. 2009).

14

### iii. Substantial Limitation

To qualify as a "disability" under the ADA, the impairment must be substantial. "An impairment substantially limits a major life activity if it makes an individual completely unable to perform the activity or if it 'significantly restricts the duration, manner, or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity.'" 29 C.F.R. § 1630.2.

In support of her disability claim, plaintiff presents the December 14, 2009 affidavit of Dr. Lazaro[9] which states, "[c]onsidering [plaintiff's] diagnosis of fibromyalgia, in addition to the associated symptoms of fatigue, daytime sleepiness, pain, and lack of concentration, I am of the medical opinion that [plaintiff's] disabling physical impairment substantially limits her in performing the major life activities of working and sleeping. " *R. 36, Exh. 12.* In particular, plaintiff cites the four instances between November 15, 2005 and August 3, 2006 noted by Dr. Lazaro, which she contends substantiate that she was disabled: (1) on November 15, 2005, she reported that she had experienced "a panic attack and again some work-related stress"; (2) on November 18, 2005, Dr. Lazaro restricted her to a light duty job; (3) on March 14, 2005, she stated that daytime sleepiness was a problem and there were issues with stress; and (4) on August 3, 2006, after her termination, she complained that she had an increase in stress and anxiety and was depressed. *R. 36, Exh. 12.*

---

[9] The record does not contain the medical records of Dr. Lazaro.

Whether an impairment is substantially limiting depends on "its nature and severity, its duration or expected duration, and its permanent or expected permanent or long-term impact." *Dupre v. Charter Behavioral Health Sys.*, 242 F.3d 610, 613 (5th Cir.2001). To establish a substantial limit in the major life activity of sleeping, a plaintiff "must present evidence, beyond vague assertions of a rough night's sleep or a need for medication, that his affliction is worse than that suffered by a large portion of the nation's adult population." *Carter*, 255 Fed.Appx. at 830 *quoting Nadler v. Harvey*, 2007 WL 2404705, at *5-6 (11th Cir. Aug. 27, 2007); *Pedroza v. Autozone*, 536 F.Supp.2d 679, 696 (W.D.Tex.2008) (the inability to enjoy more than three or four hours of uninterrupted sleep does not qualify as a substantial limitation); *see also, Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir.2006) ("intermittent disrupted sleep" is not a substantial limitation); *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316-17 (6th Cir.2001) (sleeping only four to five hours per night was not a substantial limitation and stating, "[w]hile less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population."); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1306 (10th Cir.1999) plaintiff's depression-related sleep difficulties, limiting her to two to three hours of sleep some nights, was not a substantial limitation).

Difficulty sleeping is extremely widespread. Plaintiff has made no showing that her affliction is any worse than is suffered by a large portion of the nation's adult population. She has failed to establish that the degree of limitation she suffers is substantial. Rather, plaintiff

has produced only vague and imprecise evidence to support her claim that she is substantially limited in her ability to sleep. While Dr. Lazaro has stated that fibromyalgia has "associated symptoms of fatigue, daytime sleepiness, pain, and lack of concentration" and that it "substantially limits her in performing the major life activities of working and sleeping," he has not provided any concrete details explaining the severity of the disorder or its effect on plaintiff's life. Dr. Lazaro's affidavit references only two instances during her employment in which plaintiff complained of "stress" and "sleepiness." When specifically asked about her impairments at work, plaintiff testified that she "had a lot of problems with fatigue and sleepiness, and ... I couldn't get anything organized in my mind." *R. 34, Exh. A, Depo. Of Plaintiff, p. 150.* Plaintiff stated that the impairments "did not occur every day, but frequently," and that she continued to have a problem with confusion, organizing things in her mind and remembering things at the time of the deposition. *Id. at pp. 150-152.* The record lacks a single statement clarifying the nature and severity, i.e. the extent, of plaintiff's alleged substantial limitation of sleeping. *Toyota,* 534 U.S. at 198 (the ADA requires a claimant whose symptoms vary widely from person to person to offer evidence that the extent of the limitation caused by the impairment, in terms of their own experience, is substantial).

Plaintiff also claims that she was disabled because she was substantially limited in the major life activity of working. In order to prove that she was so limited, plaintiff is required to demonstrate that her fibromyalgia precluded her from a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills

and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Dupre*, 242 F.3d at 614 *citing Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999) superseded in part by statute. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Pryor v. Trane*, 138 F.3d 1024, 1027 (5th Cir.1998) *quoting* 29 C.F.R. § 1630.3(j)(3)(I)). "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Dupre*, 242 F.3d at 614 *citing Sutton*, 527 U.S. 471, 492.

Once again, plaintiff has not produced any evidence, or even an argument, to suggest that her condition substantially limits "either a class of jobs or a broad range of jobs in various classes." In her opposition memorandum, plaintiff states that she "was a good claim representative and was appreciated by all of her co-workers." In her deposition, plaintiff stated that she has not applied for any other job since her termination because she can't be "on her feet a lot or do lifting or heavy type of work." *R. 34, Exh. A, p. 24.* Plaintiff's only evidence concerns the general restrictions imposed by Dr. Lazaro. Although Dr. Lazaro states that plaintiff's fibromyalgia substantially limits her ability to work, he only restricted her work to a light duty job and noted that "[d]aytime sleepiness and fatigue" and "[a] stressful work environment .... prevents a patient from performing her regular work without the proper accommodations." *R. 36, Exh. 12, #26.* This evidence is insufficient to show that plaintiff

18

was "significantly restricted" in her ability to work at a class or broad range of jobs. "Evidence of disqualification from a single position or narrow range of jobs will not support a finding that an individual is substantially limited from the major life activity of working." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir.1998). Plaintiff has not presented any evidence that she was significantly restricted in her ability to perform as a State Farm claim representative, much less that she was significantly restricted in her ability to perform a class of jobs or a broad range of jobs. Thus, plaintiff cannot meet her burden to establish that she is substantially limited in the major life activity of working.

### 2. *Whether Plaintiff is a Qualified Individual*

Even assuming *arguendo* that plaintiff's fibromyalgia qualifies as a disability protected by the ADA, in order to prevail on this claim plaintiff must also establish that she is a qualified individual for the job in question and that the adverse employment decision which she suffered was made because of her fibromyalgia. Plaintiff has also failed to meet her burden of proof.  An employee who cannot perform the essential functions of the position, with or without accommodation, is not a qualified individual under the ADA.  42 U.S.C. § 12111(3)(A); *Hypes on Behalf of Hypes v. First Commerce Corp.*,  134 F.3d 721, 726 (5th Cir. 1998)(the ADA does not require an employer to accommodate an employee who is not qualified for the job).  "Essential functions" are those duties that are fundamental to the job at issue. *Kapche v. City of San Antonio*, 176 F.3d 840, 843 (5th Cir. 1999) *citing* 29 C.F.R. § 1630.2.  To aid in the determination of whether a function is essential, a court may

consider as evidence a variety of factors including, but not limited to, (1) the employer's judgment as to which functions are essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the amount of time spent on the job performing the function, and (4) the work experience of both past and current employees in the job. *Id.* To avoid summary judgment on whether she is a qualified individual, plaintiff needs to show (1) that she could perform the essential functions of the job in spite of her disability, or (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job. *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810, n. 14 (5th Cir.1997).

For a period of over eighteen months, from December 13, 2004 through June 22, 2006, plaintiff had poor performance issues in failing to perform the duties required by her position. *R. 34, Exh. C; Exh. I.* The record reflects that plaintiff's supervisor, Robichaux, discussed with her and documented her consistent failure to (1) "timely and properly document the activity log of [her] claim files"; (2) maintain prompt communication with attorneys and claimants on her files; (3) provide timely status reports; and (4) bring her claim files to resolution. Additionally, Robichaux discussed instances in which she failed to notify the company of an appeal, failed to attend a mediation and settled a claim without performing a scene inspection. *Id., Exh. C.*

It is undisputed that on April 7, 2006, plaintiff requested that State Farm accommodate her with "no lifting of ladders or climbing roofs" or "driving long distances." State Farm

20

agreed to her requested accommodation and she was assigned to work exclusively as an in-office claim representative. It is also undisputed that plaintiff never requested any additional accommodations.[10] *R. 34, Exh. A, Depo. Of Plaintiff, pp. 146-147.* Plaintiff conceded that Sandra Wilson called her and asked if there was anything else they could do to accommodate her, to which she said "Not that I could think of at the moment." *Id.*

The Court finds that plaintiff has failed to show that she could perform the essential functions of the job in spite of her disability, or that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job. Therefore, plaintiff is not a qualified individual under the ADA.

## B. Plaintiff's Claim Under the Age Discrimination in Employment Act (ADEA)

As plaintiff concedes that age was not the reason for her termination of employment, her claims under the ADEA will be dismissed. *R. 36.*

### IV. CONCLUSION

Based on the record before the Court, the Court finds that there are no genuine issue of facts, therefore, defendant's motion for summary judgment will be granted and plaintiff's claims against defendant will be dismissed.

---

[10] Plaintiff stated that when she asked Robichaux to help with her reports because she was backed up, he would do the reports and tell her "you need to be doing these things because this is part of your job." *Id.*

21